May it please the court. My name is Frederick Levin. I represent Appellate Continental Finance Company. The district court erred because it improperly classified plaintiff's illusoriness claim as going to contract formation, not validity. It therefore considered it irrelevant. Could you just speak up just a touch or push a microphone up? I'll try. I'll start over. The district court erred because it improperly classified plaintiff's illusoriness claim as going to contract formation, not validity. It therefore considered it to be irrelevant whether the plaintiff's challenge went to the whole of the cardholder agreement or was specific to its arbitration provision. That was error. I'd like you to speak up as much as you can too. Okay. I'll do my best to speak as loud as I can. Okay. That's right. Forgive me if I turn to shouting. You're very interested in what you have to say. I appreciate it. Should I start over or did everybody hear at least what I said so far? Okay. I'll start with the premise of error. The district court considered it irrelevant whether plaintiff's challenge went to the whole of the cardholder agreement or was specific to its arbitration provision. That was error. Under the Supreme Court's severability test in Buckeye What difference does that make in this case? I mean, it seems to me your argument has to be basically the principles of contract formation regardless in what state. And if you have an existing contract that can be changed without notice, it's illusory. If you and I have a contract and our term is that I can change it at any time I want without telling you, I just write down a little message, put it in my drawer, and that ends it. It's illusory. But if it's following notice and consent, that's Maryland law and everywhere else in Section 287 of the Restatement, you can modify a contract with notice and consent. And so the question here is this change clause have notice and consent. And your argument has to be that it requires notice and then the customer's continued use of the card is consent. So the whole thing is sort of you go into this notion of, well, we're going to separate out the arbitration clause. When we have an illusory underlying contract, that's the argument. The Maryland case of Cheek just basically says you can't have a change without notice. That's so fundamental in contract law. And so my question is you spend a lot of time talking about trying to enforce the arbitration clause as consideration for consideration as a separate agreement. In some circumstances that may be useful, but I don't see why that argument is useful to you here at all. So let me address, take the second point first, which is I agree with you that the Cheek case says that notice is required That's just fundamental contract law. Right, in section 287. And the contract says as required by law, that's the law. There's consideration. But that's not a separate consideration or that's not a consideration in contract terms because you're required by law to do that anyway. You're not giving anything up. You're not giving anything additional. Well, it says upon notice, advanced notice as required by law, we are doing what is required and that is consideration. Yes, but how is that consideration if there's no additional above it? You're required by the law to do this. Well, you know, every contract is required, is contracted under law. But that by itself doesn't, I'm just not sure that that's consideration. At any rate, I'm not sure that there's consideration. If you can unilaterally, under this change of terms clause, change the arbitration provision or any other provision, it seems to me that it gives you a very one-sided control over the contractual relationship. The whole, it's not a contract. You can just change it at will. Well, this kind of term just puts all the authority in you and you give up nothing. And that's not a contract because a contract is a bargain and each side gets a little something. Well, the clause says upon advanced notice, right, we can change as required by law. What imposes the limitation is the legal restriction of giving notice. And I would just say- But you omitted the important part to address Judge Wilkinson's point. The important part under 287 and under all contract law in Maryland is you have to have notice and consent. And the consent is a promise for a promise which is a binding. And the consent in this case is to continue using the card after you've received notice. And thereafter, the mutual arrangement, one's going to give credit and the other's going to pay the credit and they have the terms and conditions. That's a promise for a promise and that's traditional 287 law where the consideration is the assent. I agree. But you don't say it. Well, it's not stated in the clause itself. It is. It basically says upon such notice as is required and notice and then continuation of using the card after having received the notice. So, I mean, I think the clause itself does provide consideration. And I should point out- It's a promise for a promise is your argument. In other words, you continue an arrangement, a mutually beneficial arrangement under new terms as long as both parties assent. One gives notice and the other consents. And if there's no consent, there's nothing. It's unilateral. Right. But the consent is the continued use of the card. That is correct. And that is implicit in the change clause itself. Well, it's in the language of the terms and conditions, too. And in the terms and conditions. And I would point out that in terms of mutuality, the ARB clause gives an opt-out right, a unilateral opt-out right. Well, that's my point. The consent is the continuation of the relationship. Right. That's the consideration. I agree with you on that. And the customer can opt out with notice, in which case the change will not go into effect. The relationship will end. But that's just Section 287. I agree with you. And that's Maryland law, which has applied that from the beginning of time. From those reasons, there is, in fact, consideration for the change clause. But let me come back to the original. Before you do, let me ask you this. You did, in fact, modify this contract. You changed the, you eliminated the advancement of fees. What kind of notice did you give for that? So the notice was given by posting the terms on the website. That's what's in the record. Now, the court made a fine. And you think that's sufficient, to post it on a website? That would satisfy the consent? That kind of notice is routinely given in terms of service and other online agreements? Under Maryland law. Yes, I believe that is sufficient. And the issue that the district court raised and made a ruling about, which was whether the notice was given in advance, and there's no evidence in the record to support that it wasn't. As long as we take Maryland law, we're back into the cheat case. And this, I think, that it ultimately is a question of Maryland law. The opposing side says you agree that this was a question of Maryland law. And, of course, we can't decide whether a contractual choice of law provision applies to get us to Utah or Missouri law, if no contract has been formed. You can't take a contractual choice of law provision if there's no contract to begin with. And the question I have is that the district court found that under the cheat case, that Maryland law frowned upon these unilateral change in terms provisions. And under cheat, as I understand it, an arbitration agreement was illusory under Maryland law if one of these change in terms provisions was in the contract. The whole thing seems to me to feed into Maryland law. And it's hard for me to get around the cheat case and the way Maryland law regards this. So let me introduce two points. One on the point about the concession. The district court did not accept. There was no concession. It was conditional, and the conditions weren't met. And the district court didn't accept the condition. She did her own choice of law analysis at 511, 512, where I think the district court erred in not applying the applicable laws clause. But can't Maryland law decide what's illusory and what's not? Why don't you explain that Judge Wilkinson has put right to you the cheat case? Can I get an answer to my question, please? Isn't it up to Maryland law to decide what is an illusory contract and what is not? I mean, this is a question of Maryland common law. Yes, Your Honor, but the argument here is that the choice of law provision under the case of Jackson v. Pasadena should have been enforced. I thought you said there was no difference in the choice of law. No, there is very much a difference. They said you said there was no difference. We very emphatically argue that there is a difference between Missouri and Utah law in the issue of consideration. On the consideration point, the cheat case did not let you look to the broader carpooler agreement, but Utah and Missouri law would. So there is a true choice of law. The cheat case is totally supportive of your position, and you haven't explained that. The cheat case says that changes without any notice, without any notice, are illusory. And the Holloman case said changes with notice are acceptable. And that's a Maryland law, and that's the restatement. I agree with you. Don't argue with me. That's your argument to the point being raised. Let me explain why we prevail under cheat. I just explained it to you. You haven't made that argument. Sorry? You have not made that argument. Well, we did in our papers, and if you'll allow me, I'll make it now, which is that the cheat says if you give advance notice, as Judge Niemeyer pointed out, that is sufficient consideration and the contract is not illusory. And here we give advance notice as required by law. It didn't say that either. It said changes, quote, without any notice, end quote, render the agreement illusory.  So the question is without any notice. That's the key. And the restatement 287 says notice and consent create a change to an existing contract. And there was notice and consent here. Well, I'm just telling you, I'm helping you respond on cheat, and I can't figure why you haven't figured that out. You know, I understand that, Your Honor, and I agree with you. And so that's why we prevail under cheat. And we'd also prevail under cheat for the separate reason that the cheat has a four corners rule. And the way in which the change clause has to become under the severability doctrine, which cheat embraces, has to become part of the arbitration provision. And the district court's analysis violates the cheat rule because it relies on basic terms that are not terms of incorporation to move the change clause from the broader agreement into the arbitration provision. That presumes that you're assuming that the change clause is invalid. Severability governs when there's an invalid provision, right? No, but under section two. No, severability, you're applying the severability clause, right? I'm applying the severability doctrine both under cheat. I know, but why are you at all? There's no question that a clause is invalid. It just, if the clause here said you could make a change without notice, it would be rendered illusory, the contract illusory under cheat. Right, and the question is, for purposes of it, is whether the arbitration provision included that change clause. That's part of the contract. It seems to me if you've got an illusory contract, you're dead. Right, well, that's not what the cheat rule provides. That part of it says that. The cheat rule says changes without any notice. Those are the exact words from the case. Without any notice, render the contract illusory. Your argument has to be that this contract provides for notice. It does. Well, why don't you make that argument? I have, but I think cheat also would prevail on a different aspect, which is the four corners rule. All right, thank you.  May it please the court, Benjamin Carney on behalf of the appellees. The facts of this case illustrate why Continental's unilateral change in terms clause means that there is no delegation or arbitration agreement between the parties and there never was. And again, looking back at the facts of this case, Continental's change clause allowed it to change any term of the delegation or arbitration agreements. And it says it can change it upon such notice. In other words, it's conditioned on receiving notice. And it says if you receive notice, you can opt out if you don't agree to it. And this is across the industry. I mean, every one of these things has this type of thing. You get notice. If you continue to use the card, you're agreeing to the terms. And that's nothing more than a restatement of Section 287 of the Restatement of Second of Contracts. And I suggest that probably every state has that doctrine. Judge Niemeyer, it is familiar to see those clauses that allow changes when a party continues to use, for example, a credit card. And that changes upon notice. I mean, you know, I can't figure out why we're not talking contract law here. We had a contract formation based on the use of a card and the terms and conditions. We have in that contract, we have a clause that says the lender can change it upon such notices required by law. The notice is given. There's an opt-out provision. If the customer continues to use it with the change in place, he agrees in a sense to the change. He doesn't have to agree. And he can get out. But that's not an illusory contract. It's a promise for a promise. And Cheek makes it illusory only if there is no notice, not any notice. And, Your Honor, that's what happened in this case. And that's what the arbitration and delegation provisions allow, is changes without notice. Well, how do you handle the language upon such notice? Upon such notice as required by law. And Maryland law doesn't require notice of changes. It does. Well, Your Honor, under the Cheek case, it can't because that would undermine. Cheek said notice without, I mean, a change without notice renders it illusory. If you and I have a contract which has a change clause and says I can change it at any point in time without telling you, that's illusory. I can make my change and put it in the closet, in the desk drawer, and you never know about it. But under, that's Cheek. But under Holloman, if I make a change, a unilateral change, and I give it to you and you say, oh, it's okay, I'll continue under this. That is a contract, a change, and that follows the restatement. Well, Your Honor, in the Holloman case, actually what the contract provided was it said that there was a period of 30 days where no changes could be made to the arbitration clause. And during that 30-day period, after the person had received notice of upcoming changes, they could file for arbitration. Well, sure, but I'm talking about the principle of when a contract formation. Yes. We're talking about whether this change clause renders a contract illusory or whether it provides that the lender can change the terms and conditions on notice with the opt-out provision that the customer can opt out if he doesn't want it. And Judge Niemeyer, I would point out that there's a difference between the court finding that a contract is illusory and finding that there is some affirmative requirement under the law that notice be provided. So in the Cheek case, the Court of Appeals, the Supreme Court of Maryland now found that. But a contracting party has to follow the law in any and every event. And if you don't, as part of a contractual bargain, saying we're going to follow the law, I'm just perplexed as to how that is consideration, just saying we're going to follow the law. Well, of course you're going to follow the law. But it would seem to me that something additional is required to make a contract non-illusory. And there's something that's fundamentally wrong. It doesn't strike me. It just strikes me as wrong to say that one party can change any term of an agreement upon their sole discretion. I mean, the clause itself seems to undermine the reciprocity that is the key to contract formation. Do you see what I'm saying? Yes, Your Honor. I do see what you're saying. And in fact, as we pointed out in our briefs, Your Honor, the dictionary definition of illusory consideration is doing what's already required by law. Well, let me ask you this on that point. The restatement treats a change like this as an offer. And the person's continued use as consent. And it does not require the additional payment. It's a promise for a promise. And after the change is made and the customer continues to use the card, the customer is getting the benefit of having credit extended. And the lender is getting the benefit of having the profits derived from making the loan. And that continues, that promise for promise continues with the customer's assent. That's the nature of formation of the amendment to the contract. That's what the restatement says. And Cheek is not in any way in tension with that. Cheek basically says a unilateral change without assent, without notice, renders it illusory. But Maryland follows directly, without any question, follows the restatement. Whereas if you make a change and then there's assent and you continue the relationship, it's a promise for a promise. That's a binding contract. Isn't that your understanding of the law in Maryland? Well, my understanding of the law in Maryland is that where there's a provision that allows one party to change the agreement at any time in their discretion. They can change it at any time in their discretion with notice and assent. So they can initiate a change and they say we can change our interest rate from 20% to 21%. And we'll give you notice of that. And if you assent to that, the next charge you get is going to be for 21%. If you don't agree to that, you can opt out. That's what this contract says. And that's so routine in commercial transactions. I mean, you would undermine virtually every financing terms and conditions that are being used in this country. I don't think so, Judge Niemeyer, respectfully. And as I was trying to say earlier, there are many arbitration or delegation agreements. I'm talking about contract formation. Forget the arbitration. That's part of the contract. So there are agreements that allow unilateral changes. But oftentimes, something that's not found here, oftentimes they include that language that Your Honor pointed out, that changes will be effective if you continue using the card or if you continue using our service. And nothing like that is found in this change clause. This change clause allows any changes upon notice. Please let the lawyer speak. As required by law. And here, Cheek does not require notice because it's implicit. I mean, all Cheek did, all the Supreme Court did in Cheek was to apply Maryland law to a contract and just basic contract principles. And in Cheek, the court held that where there is a unilateral change clause, the contract is illusory. Cheek did not require any notice. They just found the result or the consequences. Cheek said a change without any notice. They modified the word change. A change in the words they actually use is without any notice. And here, Your Honor, Continental didn't promise any notice. And, in fact, they didn't give any notice. They changed the delegation and arbitration agreements in this case. They changed them. They told the district court they didn't change them. Your point is that Continental essentially, in this instance, and whether this is industry-wide or not, fundamentally the question is, when you have a contract, as Judge Wilkinson has alluded to, that's one-sided, that basically says we will do it, and then you stick it on a website somewhere, and your language is such notice to you as required by law, not telling you when, not telling you how, not telling you anything. Stick it on a website. And so, okay, now you have an opportunity to opt out. That cannot be the import of the Federal Arbitration Act in terms of why we're even here, to the instance of whether a contract is formed. It cannot be Maryland law. If Maryland does not allow you simply to use the fact that you want to arbitrate as being consideration, that alone can't be it. And without any notice, any notice does not mean notice that's just I decided to put a balloon up in the sky and fly a balloon with a banner on it. That's notice. It has to have some input that notice means more than simply I'm going to stick it on a website. Assuming everyone even has a computer or can even look at the website. It has to have some indicia that there's an opportunity to consent other than I did it, and that's all the law requires me to do. But the consumer has no idea what it is. That's correct, Your Honor, and they can change any term of the agreement. And the Supreme Court, to follow up on my colleague's question, the Supreme Court has been very vigilant in saying that when we're talking about contract formation, as opposed to contract validity, that you've got to, a court decides those questions and you can't be, arbitration's an important tool, but at the same time, you can't push somebody into arbitration by ambush or with, it's got to be an up and up relationship that look, here's what's happening. And do you, are you consenting? And the, as Judge Wynn points out, upon notice, that's awfully vague. But the real problem is that I think Maryland law digs at the fundamental unfairness of a supposed contract that has a change in terms clause and that allows one party at its own sole discretion. That's the way, it doesn't require, all it says is its own sole discretion. It's a very emphatic statement in the contract, which lodges all of the power in the relationship to one party, unilaterally, to one side. And it seems to me that there's a basic ideal of reciprocity that underlies contractual bargains before, and particularly with respect to arbitration. I think that's what the district court was getting at, that there's something wrong about this. Yes, Your Honor, and the, it's basic contract principles that you can't have a contract when one party, one side doesn't agree to anything. And that's what happened here, is Continental did not agree to any arbitration. They agreed only to be able to change the terms at any time. And an important point, I think, is that not only did Continental reserve the right to change the terms at any time, and not only did Continental admit in the district court that it provided no notice of those changes, something that it didn't appeal. The district court found that there was no notice, and Continental did not appeal that factual finding. You know, that whole validity versus formation, that's what your opposing counsel attempted to start out with, the Buckeye check cashing company case. And I think it's fundamental to start there, because the Supreme Court made it clear contract validity is a delegable question. But when you're dealing with the question of whether an agreement has ever been concluded, formed, it's not delegable. And so I think that's a distinction that factors in this case from the beginning, even before we get into the nuances of it. Then we slide into the Maryland law process. The Coda case comes into question, and then we get into the Cheek case in terms of whether there's notice, which there may be a big difference as to what one would consider notice. And if it is any notice, well, I sent my dog out to bark in front of your door, and that was your notice. But it has no meaning. Notice has to have some meaning beyond I stuck it on a website. You can opt out. You can do whatever you want to. Terms are now changed. You didn't get to arbitrate that before I stuck it up there. It's up there. That's the one-sided agreement. Yes, Your Honor, and I think that what really plays into that point is that Continental not only reserved the right to make changes on an ongoing, on a foregoing basis or going forward, it reserved the right to make retroactive changes. It said that any changes will not only apply to your ongoing business, but they'll apply to your outstanding balance. So in other words, if a customer wanted to file for arbitration or delegation over their account, Continental, over their existing account, Continental could change the agreement so that retroactively they wouldn't be able to arbitrate. So even if they gave notice, they could give notice that tomorrow your contract is going to change so that you can't delegate or arbitrate as of today. So that retroactivity further undermines the idea that there was any contract here because they can not only change terms moving forward, they can change terms retroactively. They can change terms retroactively. And so it means that there is no real meaningful notice. And again, they admitted in the district court, and the district court found that there was no notice, and that's not something that Continental has appealed. They've admitted there was no notice, and they changed the agreement. They changed the arbitration provision, the delegation provision that required Continental to front the fees for the arbitration. Well, wouldn't you think if they made a change without notice, the conclusion to reach would be that that change did not go into effect? But that doesn't undermine the contract term, which says a change is made upon notice and continued consent. Well, Your Honor, I think that the fact that they changed the contract without notice simply illustrates what the contract says, which is that they can do that. They can change it without notice. Well, a court could disagree with that, and court could rule that the change they made without notice was inadequate change. In other words, didn't affect the change. But that does not render the contract illusory if the agreements were provided for change, unilateral change, with the assent of the other party and continued use of the cards. So under Cheek, the Maryland Supreme Court said that the change clause in that case allowed the changes without notice. And so if Maryland law required notice, if Maryland law required notice before a change, then the defendant in Cheek would not have been able to change the contract without notice. I agree. We agree 100 percent that Cheek stands for the notice. Change without notice is illusory. Yes, Your Honor. There's no question. So the question in this case is whether this contract provided for change without notice. Well, and this contract only provided for notice if it was required by law. And here there's no notice required by law because Cheek held that there was no notice required by law. Cheek held that it was an illusory contract. Holloman said you have to have notice in order to be effective change. And again, in Holloman, the notice period was 30 days. Well, it doesn't matter what the period was. The fact is, the principle is that you need to have a change has to be you have to give notice and have assent. And I think that at the heart of Holloman is the idea that the consumer, the party that's resisting arbitration or that's not moving for arbitration, has to have had the opportunity to arbitrate under the arbitration or delegation provision. And where one party can change it on a foregoing basis retroactively at their whim, then there's no promise to arbitrate. And one other thing that I point out is that Continental moved for arbitration, moved for arbitration on the changed agreement. That's the only agreement that they moved to arbitrate on. There's another aspect of this case that really troubles me. That is when you say required by law as required by law. In a qualified immunity context, when you're talking about whether or not something has been reasonably established, the Supreme Court has made it hard as heck to establish something that's reasonably established. Basically that there's a law. It's almost said it's got to be said precisely by the Supreme Court or a circuit court. That's it. And now we're talking about a regular consumer and you throw out to him as required by law. What is that? I'm having trouble just even thinking of those two concepts. In terms of, well, it's enough if you go and find a case somewhere in the books that said, okay, you're required here. And that cannot be what any consumer out there can be held to do. I mean, when you're looking in terms of a credit card holder or whatever, who does that? I mean, it defies logic. I mean, law cannot be just a mockery to the public. At some point in time, you have to, it doesn't take much for industry to simply say, notice that we're provided when, how, and where. It's a very simple thing to do in a contract. The reason you wouldn't put it in there, so you can do what you want to do, put a notice somewhere knowing most people are not even going to care about it, that cannot be the basis of our laws in this country. Yes, Your Honor. And I see that my time is up. I'll have a seat. Thank you very much. Mr. Levin. Yes. So I just want to start by reiterating the point. When I answer that question, I just, what does it mean to be as required by law? Well, in this particular case, it means as required by the case law. Where is that said in the contract? All I'm seeing here is such notice to you as is required by law. It begs the question, what is that? Well, first of all, Maryland courts routinely enforce provisions involving required by law. But tell me what it is. What is required? You're saying it is a term of art that Maryland defines precisely so that everybody will know what it is? Sort of like what I said about the qualified immunity in terms of whether or not a merit has been established? I'm focused on it within the notion of the Cheek Doctrine. And the Cheek Doctrine in the case Holloman established what's required by law, which is that there has to be notice and an opportunity to consent by continued use. That's what happened here. I think you need to answer Judge Wynn's question because I understand what he's saying, and is that this whole thing is terribly vague, that what notice is is terribly vague, that a consumer would have no idea what the notice was, and that it's illusory because the notice could just be anything. It's so open-ended. Well, but I think the answer to that is in what Judge Niemeyer said, which is that a court, upon consideration of what notice was given, and the covenant of good faith and fair dealing, and the law in Cheek. There's no Maryland case that rubber-stamped a notice requirement as vague and thin as this. Cheek didn't do it. Holloman didn't do it. That notice was not as vague and thin as this one right here. This is about the thinnest you can get. There's an underlying principle which says that what is required is notice. And the question is, did that notice occur? But that's virtually a throwaway phrase because it doesn't have any content. It's as vague as it could possibly be, and all you're saying is we're obligated to follow the law, whatever that is. Well, of course you're obligated to follow the law. Everybody who contracts is contracting under law. But it seems to me that something a little bit more, you don't have to be detailed, but it has to be something more than just this vague sort of boilerplate, throwaway phrase, which you can invoke at your sole discretion to change the contractual terms. So where I think the point is... It's too nebulous. Isn't there a point where consideration can be so nebulous and so vague as not to constitute consideration at all? So the consideration is the giving of notice and the opportunity to consent. Whether or not the notice was sufficient goes to whether the particular change can be enforced. And here's where I think this issue that you've raised gets confused with two different aspects of consideration. There is the consideration that is so little as to fail to give rise to a contract, but then there's failure of consideration, where the failure which constitutes a breach and doesn't give rise to a claim of illusoriness. So the legal rule, which is incorporated into our contract, says you have to give notice, and as Judge Niedmeyer pointed out, then there's an opportunity to consent. And that notice is defined as any notice. That's the way you look at it, is any notice. It doesn't matter. It's just I don't know what it means. I mean, any notice. But that gives rise, if the notice was insufficient, if there was a claim here that they didn't receive notice. We're not talking about sufficiency. From the Jake case, from Judge Niedmeyer's interpretation, it's any notice. It's not a sufficient one, not a reasonable one. It's any notice. Right, but that's where the covenant of good faith and fair dealing comes in. It was where he was leading you is to go with any notice. If it's any notice, then any notice is good. He didn't say sufficiency. He didn't say you had to look at LSA. Any notice. Well, I would think you would argue that the notice is the notice of the change. That's correct. And gives the opportunity for the customer to opt out. Correct. And so that notice is given. That's a substantive notice. I'm talking about the procedural notice. How did you do it? How did you give the notice? What you said in the notice is one thing, a notice of the change, but how did you give it? Notice has to have a procedural aspect of it, too. That's understood. What good is notice if all you do is have a notice that you write on a piece of paper and say this is of the change, but you never communicate it. So what we're talking about here is how you procedurally gave that notice. You say you did it on a website. You just stuck it up there. Well, that is a common mechanism for giving notice in every financial product across the country. Which assumes everybody has access to the website, right? Has to. Well, that is true, but there are other modes of access. Which assumes everybody has a computer. There are other modes of access, as well. What? When you put it on the website. Mailings to the customer. Website. It's on a website. You didn't say anything about mailings. You said website. Well, they get a bank statement every month. Website is where you put it. That's the only place you put it. So the issue in CHIC is giving notice and the opportunity for consent. And that's all that's required. That's what was given here. Thank you, sir. Mr. Levin? Yes, sir. Let me ask Judge Niemeyer if he has further questions. Thank you, sir. We'll come down and re-counsel and move into our next case. Thank you, sir. Thank you. Pleasure to have you. Hi. Pleasure to be here. Thank you, sir.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, James Andrew Wynn